IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERNELL WILLIAMS, | ) |
| Plaintiff, | ) |
| vs. | ) Cas No. 16 C 384 |
| DuPAGE METROPOLITAN ENFORCEMENT GROUP, DOUGLAS SANBORN, STEVEN MILLER, and LUIS TIGERA, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Ternell Williams, an inmate in the Illinois Department of Corrections, has filed a *pro se* lawsuit under 42 U.S.C. § 1983 against the DuPage Metropolitan Enforcement Group (DUMEG) and Bensenville police officer Douglas Sanborn, Downers Grove police officer Steven Miller, and Illinois state police officer Luis Tigera, all of whom were assigned to DUMEG at the relevant time. After the Court dismissed certain claims on initial review under 28 U.S.C. § 1915A, Williams's remaining claims assert false arrest, unlawful search of his vehicle, and unlawful surveillance, all in violation of his rights under the Fourth Amendment, and negligence under state law. The defendants have moved for summary judgment. For the reasons stated below, the Court grants the motion with regard to Williams's federal claims and dismisses his state law claim(s) for lack of federal subject matter jurisdiction.

**Facts**

Because the defendants have moved for summary judgment, the Court views the facts in the light most favorable to Williams and draws reasonable inferences in his favor. *See, e.g., Ashby v. Warrick Cty. Sch. Corp.*, 908 F.3d 225, 230 (7th Cir. 2018).

In 2015, Williams provided information to DUMEG regarding a person named Soto that he said was dealing narcotics. Williams entered into a written agreement with DUMEG to provide information. The agreement prohibited him from engaging in illegal conduct while working with DUMEG and said that if he did, he could be prosecuted.

In October 2015, a DuPage County prosecutor approved a request by defendant Sanborn to record phone calls between Williams and Soto. Williams made the recordings using a device supplied by the DUMEG agents. *See* Defs.' Ex. A (Williams Dep.) at 119. Sanborn then obtained a court order authorizing the use of a mobile tracking device, a pen register and trap and trace device, and other information regarding Soto's cellular phone. Conversations between Williams and Soto were recorded. Williams appears to contend that some conversations were recorded before the judicial order approving them and perhaps that the agents made misrepresentations either to the judge who entered the order or (then or later) about Williams's dealings with Soto.

Several days later, Schiller Park police responded to a call of a fight at Soto's residence and found him injured and bleeding. Witnesses reported seeing two black males flee the scene, initially on foot and then in a black four door sedan. Soto was interviewed and provided descriptions of his attackers and said they had fled in a Chevrolet sedan, possibly an Impala. Schiller Park police detective Kevin Ramirez sent

out a bulletin regarding the incident and providing descriptions of the suspects and the vehicle. In another interview the next day, Soto provided more information and said he knew one his attackers, who he referred to as "Tee," and could identify both of them.

Soto also provided the investigating officers with his cellular phone. After reviewing the call log on the phone, Sanborn and Ramirez determined that "Tee" had the same phone number as Williams. This made Williams a "person of interest" in the investigation of the assault against Soto. As a result, Sanborn terminated Williams's status as a source of information.

Soto then identified Williams from a photo array as the person who had cut his face and pointed a gun at him. The investigating officers, including Sanborn, Miller and Tigera, formulated a plan to arrest Williams. They ascertained that Williams was driving a Chevy Impala that matched the description Soto had given of the getaway car. When Williams arrived at a store's parking lot where law enforcement was waiting, officers approached him, asked if he was Ternell Williams, and arrested him when he said yes.

Williams asked officers to retrieve his wheelchair from his vehicle. When Sanborn looked inside the vehicle to locate the wheelchair, he saw blood in plain view. The vehicle was impounded. The defendants say that the vehicle was not searched until the next day, after they had obtained a search warrant.

Williams was later indicted for attempted first degree murder, home invasion, aggravated battery, and other offenses relating to the attack on Soto. On November 9, 2017 (while the present case was pending), he pled guilty to aggravated battery. At the guilty plea hearing, Williams's attorney stipulated to the following factual basis:

- Williams was in Soto's apartment on October 13, 2015 along with an uncharged

3

- individual;
- an argument ensued;
- Williams, armed with a knife, cut Soto in the head, neck, and abdomen, causing great bodily harm;
- he fled the scene with the uncharged person; and
- Soto positively identified Williams as his assailant.

Williams is currently serving a seven year prison sentence for aggravated battery.

Williams says that Soto actually identified his co-defendant, named Keyon Scott, as the person who tried to kill him. Williams also says that he was sitting in the Chevy when Soto was being attacked.

Williams concedes that after his arrest, he requested his wheelchair and medical equipment from his vehicle. He says that the officers entered the vehicle and obtained these items. He also states, however, that he did not give defendants permission to search his vehicle.

With regard to the criminal charges against him, Williams states that his public defender pressured him to plead guilty and that he was "forced" to plead guilty because of false evidence against him and withheld evidence. He says that his attorney told him that the prosecution "offered [him] 30 years at 85% and now [was] offering 7 [years] at 50%, take the 7 and you have 30 days to withdraw your plea." Williams says he feared for his safety and that of his family if he did not accept the deal, so he pled guilty. He also suggests that he was told that the guilty plea would not bar his civil lawsuit.

### Discussion

In this case, Williams asserts four claims that survived the Court's initial review

4

order under 28 U.S.C. § 1915A. He alleges that he was arrested in violation of his rights under the Fourth Amendment to the U.S. Constitution; his Fourth Amendment rights were violated in connection with the search of his vehicle; his Fourth Amendment rights were violated in connection with the interception of calls between him and Soto; and defendants negligently failed to protect him during his work as a confidential informant.

1. **False arrest claim**

Williams's false arrest claim is barred by his plea of guilty to the aggravated battery charge. The offense of aggravated battery requires commission of a battery in which the defendant knowingly caused great bodily harm. *See* 720 ILCS 5/12-3.05(a)(1). Williams's contention in this lawsuit is that he was not present in Soto's home during the altercation and, more specifically, that he did not harm Soto. That is inconsistent with his guilty plea, which has never been vacated. *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Williams from proceeding with a lawsuit on a theory that contradicts his guilty plea. *See Okoro v. Callaghan*, 324 F.3d 488, 489 (7th Cir. 2003). "[A] convicted criminal may not bring a civil suit questioning the validity of his conviction until he has gotten the conviction set aside," *id.* (citing *Heck*, 512 U.S. at 486-87), and yet that is exactly what Williams is attempting to do in this case. It is irrelevant whether Williams is *directly* attacking his conviction; as *Okoro* states, "if [a plaintiff] makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." *Okoro*, 324 F.3d at 490. That is exactly the case with Williams's false arrest claim. He contends he had nothing to do with harming Soto and that he was not even present when Soto was harmed; yet in pleading guilty, he admitted

5

exactly the opposite (including that Soto had positively identified him). And Williams's contention that he was pressured to plead guilty changes nothing. As Judge Rebecca Pallmeyer stated in *Purnell v. McCarthy*, No. 14 C 2530, 2017 WL 478301 (N.D. Ill. Feb. 6, 2017), "[w]hatever his reasons for pleading guilty . . ., Plaintiff will not be able to proceed without calling into question the validity of that plea and conviction." *Id.* at *5.

For these reasons, defendants are entitled to summary judgment on Williams's false arrest claim. That claim is dismissed without prejudice under *Heck v. Humphrey*. *See Vang v. Hoover*, 478 F. App'x 326, 327 (7th Cir. 2012) (dismissal under *Heck* is without prejudice) (citing *Polzin v. Gage*, 636 F.3d 834, 839 (7th Cir. 2011)).

**2.    Improper search claim**

Williams alleges that law enforcement improperly searched his vehicle. The evidence presented to the Court, however, reflects that he *asked* officers to enter the vehicle to retrieve his wheelchair and medical supplies, so that entry was authorized by his consent. Williams' consent may not have authorized a search or seizure of other contents of the vehicle beyond what was in plain view, but Williams offers no evidence that any such search was done at the scene or that anything was seized other than the items he himself asked officers to retrieve. Defendants have offered evidence that there was no search of the vehicle at the scene and that instead the vehicle was impounded following Williams's arrest and not searched until after Ramirez obtained a warrant. Williams offers no evidence that contradicts this.

For these reasons, defendants are entitled to summary judgment on Williams's claim regarding the search of his vehicle.

### 3. Improper surveillance claim

Williams also asserts a claim regarding the recording of his phone conversations with Soto. But consent provides justification for a search, and it is undisputed that Williams consented to the recording (Williams does not suggest that his consent was given involuntarily). Because Williams consented, he had no legitimate expectation of privacy in the conversations and thus cannot pursue a claim for violation of his Fourth Amendment rights. See generally United States v. D'Antoni, 874 F.2d 1214, 1218 (7th Cir. 1989) (citing United States v. Eschweiler, 745 F.2d 435, 436-37 (7th Cir.1984), for the proposition that "one party consent to electronic monitoring of a conversation with another does not violate the Fourth Amendment"). Soto did not consent, but Williams lacks standing to assert Soto's rights. See United States v. Payner, 447 U.S. 727, 731 (1980).

For these reasons, defendants are entitled to summary judgment on Williams's claim arising from the telephone surveillance.

### 4. Negligence claim

Williams's only remaining claim is a state law negligence claim. He alleges that defendants failed to protect him from (perhaps) Soto's attack upon him at the apartment on October 13 and, more specifically, the subsequent arrest. Because the Court has disposed of all of Williams's federal claims, the Court dismisses this claim for lack of federal subject matter jurisdiction under 28 U.S.C. § 1367(c)(3).

### Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment [dkt. no. 96] in part. The Court directs the Clerk to enter judgment dismissing

7

plaintiff's false arrest claim without prejudice under Heck v. Humphrey; dismissing plaintiff's unlawful search and improper surveillance claims with prejudice; and dismissing plaintiff's state law claim or claims for lack of federal subject matter jurisdiction.

Date: March 22, 2019

_____
MATTHEW F. KENNELLY
United States District Judge